## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**Eduardo L. Sarria and Heather R. Sarria,**<br><br>                    **Debtors.** | **Bankruptcy Case No. 18-00572-JMM** |
| **JA, LLC d/b/a Leku Ona,**<br><br>                    **Plaintiff,**<br><br>**vs.**<br><br>**Eduardo L. Sarria,**<br><br>                    **Defendant.** | **Adv. Proceeding No. 18-06019-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

    Alex McLaughlin, GIVENS PURSLEY, LLP, Boise, Idaho, Attorney for Plaintiff.

    Matthew Bennett, FOLEY FREEMAN, PLLC, Meridian, Idaho, Attorney for Defendant.

### *Introduction*

Before the Court is a motion to consider an award of costs and attorneys' fees (the "Fee Motion") filed by JA, LLC d/b/a Leku Ona (the "Plaintiff"). Dkt. No. 182. On June 25, 2019, Plaintiff obtained a judgment of $2,490 in its action under § 523(a)(2)(A)

MEMORANDUM OF DECISION – 1

against Eduardo L. Sarria (the "Defendant"). Dkt. Nos. 178, 179.[1]  Pursuant to that

judgment, Plaintiff now seeks an award of attorneys' fees under Idaho Code § 12-120(3),

which provides for awards of attorneys' fees to prevailing parties in cases involving

commercial transactions. Dkt. No. 182. Plaintiff also requests an award of costs as the

prevailing party under Local Bankruptcy Rule 7054.1. *Id.* Defendant objected to the Fee

Motion on July 23, 2019, Dkt. No. 191, and Plaintiff replied on August 22, 2019. Dkt.

No. 194. On August 29, 2019, the Court heard oral argument on the Fee Motion, and

took the matter under advisement. Dkt. No. 197. The Court has considered the parties'

briefing and arguments, and this Memorandum of Decision sets forth the Court's

findings, conclusions, and reasons for its disposition of the Fee Motion. Rules 7052;

9014.

### *Facts*

*A. Plaintiff's Nondischargeability Action*

> 1.  Complaint, Answer, and Pretrial Order

Defendant and his wife, Heather Sarria, filed a joint chapter 7 petition on May 2,

2018.[2]  On June 11, 2018, Plaintiff filed an adversary proceeding against both debtors

under § 523(a)(2)(A). Dkt. No. 1. Plaintiff alleged Defendant incurred a debt to Plaintiff

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

[2] Case # 18-00572-JMM (Bankr. D. Idaho).

MEMORANDUM OF DECISION – 2

by false pretenses, false representations, or actual fraud when he billed Plaintiff for food and wine he did not deliver.[3] *Id.* In the adversary proceeding, Plaintiff asked this Court to determine the amount of the debt owed by Defendant to Plaintiff based on Defendant's fraudulent conduct and to order any such debt nondischargeable in Defendant's chapter 7 bankruptcy case. *Id.* In its complaint, Defendant requested a judgment "in an amount to be proven at trial." *Id.* at 5. Defendant answered the complaint on July 6, 2018. Dkt. No. 6. On August 23, 2018, the Court issued its pretrial order setting a discovery deadline of March 29, 2019, a motions deadline of April 12, 2019, and trial dates of May 15 and 16, 2019. Dkt. No. 12.

　　2.　Discovery

　　Before the pretrial order was issued, Plaintiff served its first set of discovery on Defendant. Dkt. No. 10. After the pretrial order was issued, Plaintiff propounded three more sets of discovery on September 27, 2018, December 5, 2018, and February 22, 2019. Dkt. Nos. 15, 23, 90. Defendant served two sets of its own discovery on Plaintiff on July 30, 2018, and February 14, 2019. Dkt. Nos. 10, 82.

　　On September 27, 2018, Plaintiff issued notices to take the depositions of Defendant and Heather Sarria. Dkt. No. 16, 17. Those two depositions were taken on November 13 and 14, 2018. Dkt. No. 48 at 3. On October 11, 2018, Plaintiff served

---

[3] Plaintiff did not allege Heather Sarria committed any fraudulent acts, and she was later dismissed from the case at trial.

MEMORANDUM OF DECISION – 3

subpoenas on Justo Sarria and George Mendiola.  Dkt. Nos. 18, 19.  On November 21,

2018, Plaintiff served a subpoena on D.L. Evans Bank.  Dkt. No. 22.  Shortly thereafter,

on December 5, 2018, Plaintiff filed its "Notice of Subpoenas," in which it announced its

intent to subpoena seventeen separate entities and individuals to appear at depositions

and/or produce documents.[4]  Dkt. No. 24.  On January 18, 2019, Plaintiff subpoenaed

documents from Sunwest Bank.  Dkt. No. 51.

On January 18, 2019, in response to the high volume of subpoenas issued by

Plaintiff, Defendant filed a motion for a protective order, seeking to limit the number of

depositions under Civil Rule 30(a)(2).[5]  Dkt. No. 48.  On January 24, 2019, Plaintiff

vacated its subpoenas as to the requests for testimony of six proposed deponents.[6]  Dkt.

No. 55.  On January 30, 2019, Plaintiff vacated the subpoena it had previously served on

John Krueger.  Dkt. No. 60.  Then, on February 4, 2019, presumably in an effort to

clarify the record in advance of a hearing on the motion for a protective order, Plaintiff

filed its "Notice of Depositions Scheduled," in which it listed the seven depositions it still

---

[4] Justo Sarria was included in this Notice, though he had already been served with a subpoena on October
22, 2018.  Dkt. No. 19.  The other sixteen entities and individuals listed in the Notice included (1) 6929
Land Company LLC, (2) Sherry Morgan, (3) Clay Christensen, (4) Neal Custer, (5) Amaya Sarria,
(6) Patricia Elrod, (7) John Krueger, (8) Desiree Berg, (9) CliftonLarsonAllen LLP, (10) Steve Archabal,
(11) Carmen Archabal, (12) Jeremy Malone, (13) Anna Malone, (14), Kale Becker, (15) Jerry Gavica,
and (16) Riche, Dempsey & Associates, Chtd.

[5] Civil Rule 30(a)(2) requires a party seeking to take more than ten depositions in a case to obtain a
stipulation from opposing counsel or seek leave of court.

[6] These six were: (1) 6929 Land Company LLC, (2) CliftonLarsonAllen LLP, (3) Steven Archabal,
(4) Carmen Archabal, (5) Jeremy Malone, and (6) Ana Malone.  Dkt. No. 55.

MEMORANDUM OF DECISION – 4

intended to take as of the time of the hearing.[7]  Dkt. No. 64.  Over the next eight days,

Plaintiff vacated three more subpoenas as to the requests for testimony of Neal Custer,

Clay Christensen, and Patricia Elrod.  Dkt. Nos. 67, 73.  On February 14, 2019, Plaintiff

issued notice of its intent to depose Joe Artiach, Marisa Lopez, and Andoni Artiach.  Dkt.

Nos. 78, 79, 80.  On March 18, 2019, Plaintiff scheduled second depositions with

Defendant and Heather Sarria.  Dkt. Nos. 103, 104.

On February 4, 2019, the Ada County Prosecutor's Office (the "ACPO") filed a

motion to quash the subpoena of one of its attorneys, Sherry Morgan (hereinafter,

"Morgan").  Dkt. No. 65.  The ACPO vigorously sought to prevent Plaintiff from

deposing Morgan regarding the ACPO's exercise of prosecutorial discretion in its

decision not to prosecute the Defendant based on a report from the Boise Police

Department.  After extensive briefing, and a hearing on March 28, 2019, the Court

ordered that Plaintiff could not question Morgan about the ACPO's exercise of

prosecutorial discretion, but that Morgan would otherwise have to respond to deposition

questions regarding her personal communications with the Defendant and Heather Sarria.

Dkt. No. 120.  After the Court issued its order on the motion to quash, the ACPO filed a

motion to consider relief from that order.  Dkt. No. 152.  After yet more briefing on the

issues, as well as another hearing, the ACPO's motion to consider relief was denied on

---

[7] The seven deponents listed in the Plaintiff's Notice were (1) Justo Sarria, (2) Sherry Morgan, (3) Clay
Christensen, (4) Neal Custer, (5) Patricia Elrod, (6) Desiree Berg, and (7) Jerri Gavica.

MEMORANDUM OF DECISION – 5

May 14, 2019, and the parties then turned their attention towards trial, which was to

begin the next day.  Dkt. No. 169.

    3.  <u>Motions</u>

All the while, and partially as a result of the extensive discovery sought as

described above, the parties filed and argued a number of motions.  First, on January 17,

2019, Plaintiff filed a motion to strike affirmative defenses, which was denied after a

hearing on February 26, 2019.  Dkt. Nos. 45, 91.  One day later, on January 18, 2019,

Defendant filed its motion for a protective order, in which it sought to limit Plaintiff's

discovery as described above.  Dkt. No. 48.  This motion was also denied, though the

Court notes the motion had merit at the time it was filed and might have been granted had

Plaintiff not remediated the issues raised in the motion by preemptively vacating some of

its depositions so as to comply with the deposition limits in Civil Rule 30(a)(2).  Next, as

discussed above, the ACPO filed its motion to quash on February 4, 2019.  Dkt. No. 65.

On March 6, 2019, Defendant filed a motion for summary judgment that was

denied on April 15, 2019.  Dkt. Nos. 94, 135, 137.  While the motion for summary

judgment was pending, Plaintiff successfully moved to extend the date of the final

hearing on that motion because of issues related to Morgan and the ACPO's motion to

quash.  Dkt. No. 123.   On March 28, 2019, Defendant filed a motion to dismiss the

adversary proceeding, which was denied on April 3, 2019.  Dkt. Nos. 116, 133.  Lastly,

on April 22, 2019, Plaintiff brought a motion in limine, seeking to clarify the scope of

MEMORANDUM OF DECISION – 6

admissible evidence at trial.  Dkt. No. 138.  The motion in limine was granted after a

hearing on May 8, 2019.  Dkt. No. 159.

    4.  <u>Trial</u>

The parties conducted a two-day trial on May 15 and 16, 2019.  Plaintiff elected to

have two attorneys, Michael Roe and Alex McLaughlin, and a paralegal, Keri Moody,

attend both days of trial (hereinafter "Roe," "McLaughlin," and "Moody" respectively).

Defendant was represented at trial by a single attorney, Matthew Bennett.  At the

conclusion of trial, the Court took the matter under advisement.  On June 25, 2019, the

Court issued its memorandum of decision, accompanied by an order and judgment

awarding Plaintiff $2,490 in nondischargeable damages.  Dkt. Nos. 178, 179.

*B. Plaintiff's Fee Motion*

On July 9, 2019, Plaintiff filed its Fee Motion, a memorandum supporting its

request for fees, a sworn declaration of Roe, and a bill of costs.  Dkt. Nos. 182, 183, 184,

185.  Roe's declaration contains a "Fees and Costs Listing" that indicates Plaintiff's

attorneys' fees in the case totaled $233,076.50 for 779.9 hours of work.  Dkt. No. 184 at

63.  Plaintiff's counsel voluntarily reduced its request for attorneys' fees to $175,000,

citing concerns about "the disparity between the amount in controversy and the amount

awarded."  Dkt. No. 183 at 3; Dkt. No. 184 at 9.  The Court has reviewed Plaintiff's

"Fees and Costs Listing" and determined it includes $74,799.50 in attorneys' fees for

discovery and $24,703 in attorneys' fees related to the ACPO's motion to quash.  Dkt.

No. 184, Ex. A.  Plaintiff also seeks an award of $7,981.31 in costs for transcript

MEMORANDUM OF DECISION – 7

expenses, deposition costs, witness fees and mileage, service of process expenses, and
other miscellaneous items.  Dkt. No. 183 at 2.

### *Analysis and Disposition*

*A. Costs and Attorneys' Fees in Nondischargeability Actions*

The Supreme Court has held that, under § 523(a)(2)(A), any debt incurred by
fraud, including attorneys' fees and costs, is nondischargeable in bankruptcy.  *Cohen v.
de la Cruz*, 523 U.S. 213, 223 (1998); *see also Kilborn v. Haun (In re Haun)*, 396 B.R.
522, 526 (Bankr. D. Idaho 2008) (explaining that the discharge exception under
§ 523(a)(2)(A) applies to all liability arising as a result of fraudulent conduct).  "That
said, to recover attorneys' fees under *Cohen*, the creditor must be able to recover the fees
outside the bankruptcy court under state or federal law."  *Haun*, 396 B.R. at 526 (citing
*Bertola v. N. Wis. Produce Co. (In re Bertola)*, 317 B.R. 95, 99–100 (9th Cir. BAP
2004)).  The inquiry is whether the "plaintiff would be entitled to fees in state court for
establishing those elements of the claim which the bankruptcy court finds support a
conclusion of nondischargeabililty."  *Haun*, 396 B.R. at 528.  Therefore, the Court must
next consider whether Plaintiff would be entitled to recover fees in an Idaho state court
for establishing the existence of a fraud debt owed to it by Defendant.

*B. Attorneys' Fees and the Applicability of Idaho Code § 12-120(3)*

1.  Idaho Code § 12-120(3)

Plaintiff contends that Idaho Code § 12-120(3) provides the statutory basis for
attorneys' fees in this case:

MEMORANDUM OF DECISION − 8

> In any civil action to recover on an open account, account stated, note, bill,
> negotiable instrument, guaranty, or contract relating to the purchase or sale
> of goods, wares, merchandise, or services and in any commercial
> transaction unless otherwise provided by law, the prevailing party shall be
> allowed a reasonable attorney's fee to be set by the court, to be taxed and
> collected as costs.
> The term "commercial transaction" is defined to mean all transactions
> except transactions for personal or household purposes.

To decide whether the standard in Idaho Code § 12-120(3) is met, "the Court must

determine if Plaintiff is a 'prevailing party' and whether the gravamen of the litigation

dealt with a 'commercial transaction.'  Neither the absence of a proven contract, nor the

fact that Plaintiff's claim is based on fraud, precludes operation of Idaho Code § 12-

120(3)."  *Haun*, 396 B.R. at 530 (citing *Blimka v. My Web Wholesaler, LLC*, 152 P.3d

594, 599–600 (Idaho 2007)).

a. Prevailing Party

Idaho Rule of Civil Procedure 54(d)(1)(B) provides the standard this Court must

apply to decide which party prevailed under Idaho law:

> In determining which party to an action is a prevailing party and entitled to
> costs, the trial court must, in its sound discretion, consider the final
> judgment or result of the action in relation to the relief sought by the
> respective parties.  The trial court may determine that a party to an action
> prevailed in part and did not prevail in part, and on so finding may
> apportion the costs between and among the parties in a fair and equitable
> manner after considering all of the issues and claims involved in the action
> and the resulting judgment or judgments obtained.

Idaho Rule of Civil Procedure Rule 54(d)(1)(B) requires courts "to consider three

areas of inquiry: (1) the final judgment or result obtained in the action in relation to the

relief sought by the respective parties, (2) whether there were multiple claims or issues

MEMORANDUM OF DECISION – 9

among the parties, and (3) the extent to which each of the parties prevailed on each of the

issues or claims." *Burns v. County of Boundary*, 818 P.2d 327, 330 (Idaho Ct. App.

1990) (citing *Chadderdon v. King*, 659 P.2d 160 (Idaho Ct. App. 1983)). "In applying

this standard, the district court is not required to simply award attorney fees to any party

who obtained a monetary judgment, no matter how paltry. Rather, the court is allowed to

consider the presence and absence of awards of affirmative relief and determine which

party, on balance, prevailed in the action." *Id.*

Plaintiff claims it prevailed under this standard because it obtained a judgment of

$2,490 against Eduardo on its § 523(a)(2)(A) claim, which was the only claim pled and

litigated among the parties during the adversary proceeding. Dkt. No. 194 at 8.

Defendant contends that Plaintiff merely prevailed in part, for two reasons. First,

Defendant contends Plaintiff only prevailed in part because Heather Sarria, a co-

defendant in the action, was dismissed from the case and should in fact be awarded costs

against Plaintiff because she prevailed. Dkt. No. 191 at 4. Second, Defendant argues

Plaintiff did not prevail because it only recovered five percent of the damages it claimed

it could prove in a January 2019 discovery document. *Id.*

First, it is clear enough that Plaintiff did not prevail against Heather Sarria. As

such, no fees shall be awarded against her individually in this action. However, Ms.

Sarria failed to file a motion seeking her own fees, and thus as a matter of procedure, she

may not be awarded costs against the Plaintiff.

MEMORANDUM OF DECISION − 10

Second, Defendant points to the Idaho Supreme Court's ruling in *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving Inc.* for the proposition that courts have discretion in determining who prevailed in an action based on "an overall view, not a claim-by-claim analysis."  117 P.3d 130, 133 (Idaho 2005).  However, Plaintiff correctly points out that this "overall view" analysis is limited to actions "where there are claims and counterclaims between opposing parties[.]"  *Id.*  Here, only a single claim and no counterclaims were litigated among the parties, and Plaintiff sought and obtained a judgment against Defendant on that claim.  While it is true Heather Sarria was dismissed from the case, Plaintiff clearly stated from the outset that Ms. Sarria was only named as a defendant out of an excess of caution so as to bind the community estate to any judgment it might receive.[8]

Thus, Defendant did not prevail in defending against Plaintiff's only claim against him.  Nonetheless, the Court must also consider whether Plaintiff's recovery against Defendant was substantial enough, as compared with what was sought, to find that Plaintiff prevailed.

The amount of damages sought by Plaintiff in this case was unclear throughout pretrial proceedings.  Plaintiff's complaint indicated it sought damages in an amount to be proven at trial.  Dkt. No. 1 at 5.  Then, on January 22, 2019, Plaintiff suggested

---

[8] Plaintiff's complaint indicated that "[t]he allegations in this pleading are directed against [Defendant]. Heather Sarria is being named solely because this is a joint petition.  However, given her status as Mr. Sarria's spouse, any judgment would bind their community estate."  Dkt. No. 1 at 2.

MEMORANDUM OF DECISION – 11

damages might be as high as $50,000 when it served supplemental discovery responses on Defendant.  Two weeks later, at a hearing on Defendant's motion for a protective order, Plaintiff stated damages would likely be far less than $50,000, and that problems of proof continued to make it difficult for Plaintiff to ascertain the amount of damages as a sum certain.  Dkt. No. 68.  On March 28, 2019, Defendant filed a motion to dismiss Plaintiff's case because the extent of damages was yet unclear.  Dkt. No. 116.  In its pretrial brief, Plaintiff indicated it was seeking between $3,260 and $10,000 in damages.  Dkt. No. 163.  Plaintiff ultimately obtained a judgment of $2,490.  Dkt No. 179.

The Idaho Court of Appeals has previously decided cases in which it was unclear whether a party had prevailed based on the amount of damages obtained compared with the amount of damages sought.  For example, in *Gilbert v. City of Caldwell*, the Idaho Court of Appeals held that it was not an abuse of the trial court's discretion where it awarded fees and costs to a party that only recovered $7,500 of the $160,000 it had originally sought in its complaint.[9]  732 P.2d 355, 368 (Idaho Ct. App. 1987).  This was true even though the plaintiff had voluntarily dismissed some of its claims.  *Id.*  However, in another case, the Idaho Court of Appeals upheld a trial court's decision not to award fees to a party seeking $1,000,000 in damages where it only obtained a $45 judgment.[10]  *Burns*, 818 P.2d at 330.

---

[9] The plaintiff in *Gilbert* thus recovered roughly 4.6% of what it originally sought.

[10] The plaintiff in *Burns* thus recovered only 0.000045% of what it originally sought.

MEMORANDUM OF DECISION – 12

Here, Plaintiff's recovery against Defendant was more than nominal. While Plaintiff alleged damages of $50,000 at one point during discovery, its complaint suggested it would prove the amount of damages at trial. Moreover, Plaintiff was candid throughout the proceedings that problems of proof made it difficult to determine the actual amount of the damages it suffered. In its trial brief, Plaintiff sought between $3,260 and $10,000 in damages. Even taking $50,000, which is the highest amount of damages mentioned by Plaintiff at any point in the pretrial proceedings, Plaintiff still recovered roughly 5% of the amount sought.[11] This recovery is more akin to the recovery in *Gilbert* than the nominal recovery in *Burns*. In view of the problems of proof presented in this case caused by each party's failure to keep and maintain records, Plaintiff's varying claims as to the amount of damages sought is excusable. Plaintiff was candid, both in its pleadings and in open court, about the fact that its damages based on Defendant's fraud were difficult to prove.

Ultimately, Plaintiff was awarded a judgment of $2,490 on its only claim against Defendant. While the final amount of the judgment is far less than what was suggested at one point during the course of discovery, in its discretion the Court finds that Plaintiff's recovery of $2,490 on its lone claim was more than nominal or paltry, and on balance, Plaintiff was the prevailing party in the adversary proceeding.

---

[11] $2,490 of $50,000 is 4.98%. Plaintiff's recovery was 76.3% of the lower range of damages of $3,260 mentioned in its trial brief and 24.9% of the higher range of damages of $10,000 mentioned in the same.

MEMORANDUM OF DECISION – 13

b. Commercial Transaction

Idaho Code § 12-120(3) defines commercial transactions as "all transactions except transactions for personal or household purposes." Here, Defendant was a supplier of imported Basque goods and billed Plaintiff for such goods for use in Plaintiff's restaurant. The goods were delivered for a commercial purpose and not for Plaintiff's personal or household use. Thus, even though this was a fraud case, the core issue disputed by the parties was whether or not Defendant delivered goods under the terms of an oral contract with Plaintiff. As this court explained in *Haun*, neither the absence of a written contract, nor the fact that Plaintiff's claim is based on fraud, precludes the operation of Idaho Code § 12-120(3). *Haun*, 396 B.R. at 520. Therefore, the Court finds that the gravamen of Plaintiff's claim was a commercial transaction as defined in Idaho Code § 12-120(3).

Since Plaintiff was the prevailing party in this case, and the Plaintiff's claim was fundamentally commercial, Plaintiff is entitled to an award of attorneys' fees and costs. Next, the Court will address the appropriate amount of such an award in view of the reasonableness factors found in Idaho Rule of Civil Procedure 54(e)(3).

*C. Reasonableness of Attorneys' Fees: Idaho Rule of Civil Procedure 54(e)(3)*

1. Legal Standard

"The amount of attorney's fees to be awarded under [Idaho Code] § 12-120(3) is committed to the district court's discretion." *Johannsen v. Utterbeck*, 196 P.3d 341, 350 (Idaho 2008) (citing *Lettunich v. Lettunich*, 111 P.3d 110, 120 (Idaho 2005)). "When

MEMORANDUM OF DECISION − 14

awarding attorney's fees, a district court must consider the applicable factors set forth in

Idaho R. Civ. P. 54(e)(3) and may consider any other factor the court deems appropriate."

*Id.* (quoting *Lee v. Nickerson*, 189 P.3d 467, 472–73 (Idaho 2008)).  Courts do not have

to address all of the Idaho R. Civ. P. 54(e)(3) factors in writing, but the record must

clearly reflect that it considered all of the factors.  *Id.* at 350–51; *H2O Envtl., Inc. v.*

*Farm Supply Distribs., Inc.*, 429 P.3d 183, 187–88 (Idaho 2018).  A trial court does not

abuse its discretion where it "(1) correctly perceive[s] the issue as one of discretion, (2)

act[s] within the outer boundaries of its discretion, (3) act[s] consistently with the legal

standards applicable to the specific choices available to it, and (4) reach[es] its decision

by the exercise of reason."  *H20 Envtl., Inc.*, 429 P.3d at 187–88.  "The bottom line in an

award of attorney's fees is reasonableness."  *Johannsen*, 196 P.3d at 351.

      Here, the reasonableness standard this Court must apply is provided by Idaho R.

Civ. P. 54(e)(3):

> *Amount of attorney fees.* If the court grants attorney fees to a party or
> parties in a civil action it must consider the following in determining the
> amount of such fees:
>
> (A) the time and labor required;
>
> (B) the novelty and difficulty of the questions;
>
> (C) the skill requisite to perform the legal service properly and the
> experience and ability of the attorney in the particular field of law;
>
> (D) the prevailing charges for like work;
>
> (E) whether the fee is fixed or contingent;

MEMORANDUM OF DECISION − 15

(F) the time limitations imposed by the client or the circumstances of the case;

(G) the amount involved and the results obtained;

(H) the undesirability of the case;

(I) the nature and length of the professional relationship with the client;

(J) awards in similar cases;

(K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;

(L) any other factor which the court deems appropriate in the particular case.

2.   Analysis

The Court has considered and will address each of the Idaho R. Civ. P. 54(e)(3) factors in turn.

a. Time and Labor Required

1. Discovery Expenses

In just over thirteen months, four attorneys and three paralegals spent 779.9 hours working on this case on behalf of Plaintiff.  In evaluating the time and labor required under Idaho R. Civ. P. 54(e)(3), "[t]he time and labor actually expended by an attorney is to be considered, but it is also to be evaluated under a standard of reasonableness. 'A court . . . need not blindly accept the figures advanced by the attorney.'"  *Daisy Mfg. Co. v. Paintball Sports, Inc.*, 999 P.2d 914, 918 (Idaho App. 2000) (quoting *Craft Wall of*

MEMORANDUM OF DECISION − 16

*Idaho, Inc. v. Stonebraker*, 701 P.2d 324, 326 (Idaho App. 1985)), *abrogated by BECO Const. Co., Inc. v. J-U-B Eng'rs, Inc.*, 233 P.3d 1216 (Idaho 2010).

Here, the amount of time and labor expended on the discovery process exceeds the bounds of reasonableness. The Court's review of Plaintiff's "Fees and Costs Listing" reflects that Plaintiff incurred fees of at least $74,799.50 in discovery. While there were undoubtedly problems related to proof of damages in this case, the Court finds this amount to be excessive.

For example, on December 5, 2018, Plaintiff's counsel issued sixteen subpoenas requesting various entities and individuals to testify at depositions and produce documents and electronically stored information. Dkt. No. 24. First, Civil Rule 30, which is incorporated into bankruptcy proceedings by Rule 7030, governs the limitations on depositions in this case and requires parties seeking to depose more than ten individuals to obtain consent of opposing counsel or leave of the court. Here, Plaintiff did neither, and only reduced the number of depositions it sought to take in the face of a motion for a protective order filed by Defendant. Because Plaintiff remedied this excessive approach in advance of the hearing on the motion for the protective order, Defendant's motion was denied. Even so, the very process of preparing and serving the subpoenas in an attempt to take all sixteen of the depositions, and the later withdrawal of the subpoenas so as to comply with Civil Rule 30, was unnecessary, excessive, and costly. This excess generated more fees because the parties spent substantial time

MEMORANDUM OF DECISION – 17

briefing and arguing the motion for a protective order before the Court.  This is but one example of Plaintiff's aggressive discovery tactics in this case.

Second, per the Court's review of the record, Plaintiff did not use any of the information obtained by virtue of the subpoenas to prove its case either before or at trial. While, in general, plaintiffs must be given leeway to seek out the facts necessary to prevail in a fraud case, the Court finds Plaintiff's efforts to uncover evidence through discovery in this case to be excessive.

During oral arguments on the Fee Motion, the parties and the Court discussed the fact that it was difficult to prove damages in this case.  Plaintiff also relied heavily on this fact in its briefing.  The parties agreed that it was uniquely difficult to prove damages in this case because (1) Plaintiff kept poor records of its purchasing and its transactions with its vendors, (2) Plaintiff had poor institutional control over its inventory, (3) Defendant destroyed all of its paper records related to the disputed deliveries in this case, and (4) relevant information about the deliveries was also kept on Defendant's computer, and the computer crashed such that none of the records were ever recovered from it.

To summarize, the problems of proof in this case were created by both parties. When questioned about how the Court should deal with this in contemplating the attorney's fees related to discovery incurred by Plaintiff in this case, Plaintiff's counsel candidly acknowledged that the parties were "equally at fault."  The Court agrees with this characterization and in light of Plaintiff's excessive approach to discovery as discussed above, finds that each party must bear its own discovery costs.  Therefore, in

MEMORANDUM OF DECISION – 18

applying this reasonableness factor, the Court finds that Plaintiff is responsible for its own discovery-related attorneys' fees of $74,799.50.

### 2. Duplication of Efforts at Trial

Roe, McLaughlin, and Moody all attended the two-day trial in this matter. While Plaintiff's counsel may bring any amount of staff it feels is appropriate to attend trial, the Court finds that the presence of two attorneys and a paralegal in the courtroom for a trial of this scale was unnecessary and duplicative. As such, the Court finds that charges for Roe's fees for appearance at trial are reasonable, but the $8,421 in attorneys' fees related to McLaughlin and Moody's attendance at trial are duplicative and unreasonable.

### b. Novelty and Difficulty of Questions

Plaintiff contends this case was difficult because (1) fraud is difficult to prove in general, (2) discovery disputes raised novel and difficult legal issues, and (3) the motions filed by both parties raised novel and difficult legal issues. Dkt. No. 184 at 4–5. In response, Defendant claims "[t]his case was not particularly difficult or complex," but does not provide details sufficiently explaining such characterization. Dkt. No. 191 at 8.

As described above, this case was litigated fiercely between the parties. However, the legal standards under § 523(a)(2)(A) in the Ninth Circuit are well-settled and did not present any particularly novel or difficult questions in this case. The litigants raised and argued relatively commonplace legal issues related to Civil Rules 8(c), 9(b), and 12(f), Federal Rules of Evid. 404(b) and 608, torts, the UCC, and prosecutorial discretion.

MEMORANDUM OF DECISION − 19

While there were indeed a high volume of legal issues raised between the parties, those issues were not uniquely novel or difficult as compared to the issues normally raised in adversary proceedings in bankruptcy.  Adversary proceedings routinely involve fraud and the problems of proof that come part and parcel with proving a fraud case.  It is also common in adversary proceedings for the parties to argue issues of civil procedure, evidence, torts, fraud, and the UCC such as the issues raised in this case.  The issue of prosecutorial discretion raised by the ACPO's motion to quash was somewhat novel in the bankruptcy context but was not so complex as to bear substantially on this factor.  On the whole, due to the strategic choices the parties made in discovery and in motion practice, the parties indeed devoted substantial time to researching and briefing a high volume of issues in this case.  Even so, the Court does not find that any of these issues were so novel or difficult such that this factor affects the overall reasonableness of the attorneys' fees requested.

### c. Legal Skills and Experience of Attorneys

Next, the Court must weigh "the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law." Idaho R. Civ. P. 54(e)(3)(C).  Plaintiff's lead attorney, Roe, argues he had the requisite skill to effectively represent Plaintiff in this case because he is a partner in his firm and has over thirty years of experience litigating multi-million-dollar cases in various state and federal courts.  Dkt. No. 184 at 6.  McLaughlin, Plaintiff's second attorney in this case, is also a partner in his firm and has practiced law for over ten years.  *Id.*  Whereas

MEMORANDUM OF DECISION – 20

Roe does not claim any experience specific to bankruptcy court, McLaughlin has

substantial experience practicing bankruptcy and commercial law. *Id.* Like Roe,

McLaughlin has represented clients in a variety of state and federal courts. *Id.* A third

attorney that assisted with the case, Melodie McQuade ("McQuade"), has over seven

years of litigation experience. *Id.* at 6–7. Lastly, Plaintiff asserts that the two primary

paralegals that worked on its case, Moody and Tiffiny Hudak ("Hudak"), have substantial

litigation experience, suggesting they are sufficiently skilled to perform legal services

properly in this case. *Id.* at 7.

In response, Defendant contends that this case did not require much skill because

any attorney representing Plaintiff could have settled the case with Defendant early on in

the litigation. Dkt. No. 191 at 8. The Court declines to address the possible impact of

early settlement discussions in this case at this juncture.

Here, the issues are whether Plaintiff's various attorneys and paralegals had the

required skills to perform legal services properly and whether they had sufficient

experience and ability in this area of the law. The Court finds that Plaintiff's legal

representatives had the skills necessary to provide legal services in this case and in fact

did so with a high level of competence and ability. While the Court notes that Roe did

not claim any previous bankruptcy experience, he has substantial experience in other

commercial litigation. Roe amply demonstrated his abilities throughout the case, and the

Court finds he had adequate skill to represent Plaintiff properly. Similarly, the Court

finds attorneys McLaughlin and McQuade, and paralegals Moody and Hudak, also

MEMORANDUM OF DECISION – 21

possessed the skills, experience, and abilities required to perform legal services properly

in this case.

                d. Prevailing Charges for Like Work

       In this case, Roe's billing rate was $375/hour, McLaughlin billed $260/hour

through the end of 2018 and $295/hour thereafter, McQuade billed $240/hour, another of

Plaintiff's attorneys billed $185/hour, and three paralegals billed between $175/hour to

$195/hour.  In his declaration, Roe states that his rate is "reasonable and consistent with

the market for attorneys of similar experience at larger firms in Boise, Idaho[.]"  Dkt. No.

184 at 6.  Roe also states that the rates of all of the other professionals that worked on the

case are consistent for attorneys and paralegals with similar experience and skill.  *Id.* at

6–7.  In contrast, Defendant argues that the hourly rates charged by Plaintiff's counsel in

this case are excessive, and that "[a]ttorneys performing work on adversary proceedings

typically charge between $175.00 and $250.00 per hour."  Dkt. No. 191 at 9.  Defendant

did not offer any non-conclusory evidence or legal argument about what the appropriate

rate should be and why.

       This Court has recently considered the specific issue of the prevailing rates that

may be charged in bankruptcy court.  For example, in *Holland & Hart, LLP v. Oversight

Comm. Under Confirmed Plan of Liquidation (In re Hopkins Nw. Fund LLC)*, the District

Court of Idaho found that this Court did not abuse its discretion where it limited the

hourly rates of partners to $280/hour, associates to $220/hour, and paralegals to

$100/hour.  567 B.R. 590, 596 (D. Idaho 2017).  In that case, the Court found that the

MEMORANDUM OF DECISION – 22

range of hourly rates for attorneys in District of Idaho bankruptcy cases was between $200 and $450.  *Id.* at 592–93.  Even though the compensation requested fell within that range of rates, the Court limited the compensation of the practitioners based on its assessment of the size and complexity of that case compared with other cases.  After an extensive discussion of prevailing billing rates in the District of Idaho, this Court applied the same hourly rate limits in a subsequent case.  *In re KA Investments*, #17-00495-TLM (Bankr. D. Idaho Aug. 24, 2017).

As to the complexity of this case, the Court reincorporates by reference the parties' arguments, and its own discussion, of the novelty and difficulty of the legal issues disputed in this case, which are relevant to the determination of reasonable hourly rates.  While this case did not raise an abundance of  novel and complex legal issues, due to discovery challenges and problems of proof, it did require a high level of diligence and skill to bring about a successful conclusion.  The $375/hour rate requested by Roe falls on the higher end of the spectrum of the $200 to $450 per hour that is customary in the District of Idaho as discussed in *Hopkins* and *KA Investments*.  The rates of $240/hour to $295/hour requested by McLaughlin and McQuade are at the low-to-middle end of that spectrum.  The Court finds that these rates are reasonable when compared with the prevailing rates charged in the District of Idaho for similar work.[12]

---

[12] The Court wishes to clarify that today's decision regarding the rates in this case does not mean that similar rates will automatically be approved in future cases.  The propriety of rates charged is a fact-based inquiry that must be decided on a case-by-case basis.

MEMORANDUM OF DECISION – 23

Based on the Court's own knowledge and experience, it finds that the rates of $175/hour to $195/hour charged by Plaintiff's paralegals in this case are on the higher end of charges seen in the District of Idaho for such services but are nonetheless reasonable. Moody and Hudak both have years of previous litigation experience, and Moody has substantial previous experience in bankruptcy matters. This suggests they are able to work more effectively and efficiently than less-experienced paralegals charging lower rates, thus justifying a rate of compensation near the top of the range of reasonableness in the District of Idaho.

### e. Fee Agreement Characteristics

Plaintiff's fee agreement with its attorneys was based on an hourly rate. Dkt. No. 184 at 2. Therefore, the fee was not fixed or contingent, and this factor does not weigh for or against the reasonableness of the fees requested in this case.

### f. Time Limitations

Neither party argues that this factor is relevant to this case. The Court has reviewed the record and determined that no party adduced evidence that there were time limitations imposed by the client or the circumstances of the case. This factor does not affect the reasonableness of the fees requested in this case.

### g. Amount Involved and Results Obtained

In this case, Plaintiff asks Defendant to pay $175,000 in attorneys' fees where Plaintiff received a judgment of only $2,490. Facially, the requested attorneys' fees involved are wildly disproportionate when compared with the result obtained for

MEMORANDUM OF DECISION − 24

Plaintiff.  However, Idaho R. Civ. P. 54(e)(3) does not require the amount of attorney fees awarded to be proportionate to the size or amount of the damages award.  *Meldco, Inc. v. Hollytext Carpet Mills, Inc.*, 796 P.2d 142, 148 (Idaho App. 1990).  Nor may this Court give one factor more weight or emphasis than the weight given to the other applicable Idaho R. Civ. P. 54(e)(3) factors.  *Id.*

The Court acknowledges that there is a substantial disparity between the amount of fees sought and the results obtained.  However, the fees are unsurprising in light of the number of legal issues litigated during the acrimonious pretrial proceedings in this case.  While the Court finds that this factor supports Defendant's contention that the fees in this case are unreasonable, it also notes that many of the Idaho R. Civ. P. 54(e)(3) factors overlap and are interrelated.  As such, the Court's remedy for such unreasonableness has already been incorporated into its decision to reduce Plaintiff's fees as discussed in other sections of this opinion.

h. Undesirability of the Case

Neither party argues that this factor is relevant to this case.  The Court finds no evidence in the record that suggests this case was undesirable.  This factor does not affect the reasonableness of the fees requested in this case.

i. Professional Relationship of Client and Attorney

Neither party argues that this factor is relevant to this case.  The Court finds no evidence in the record that suggests the nature and length of the professional relationship

MEMORANDUM OF DECISION − 25

Case 18-06019-JMM   Doc 199   Filed 09/20/19   Entered 09/20/19 13:27:09   Desc Main
Document      Page 26 of 31

between Plaintiff and his attorneys should affect the reasonableness of the fees requested in this case.

>          j. Awards in Similar Cases

The parties provided the Court with very little to consider on this factor. Defendant claims it "is unaware of any similar case that achieved an award of attorney fees of $175,000.00 in a nondischargeability action over $2,490" and that "most courts deny any award of fees in cases such as this." Dkt. No. 191 at 10. Disappointingly, Defendant offers no examples of what an appropriate award in any similar case actually was or examples of cases in which a court denied a fee award under similar circumstances.

Plaintiff, for its part, cites to other cases in which the amount in controversy is far smaller than the amount of attorney's fees requested. Dkt. No. 194. In *Campbell v. Parkway Surgery Ctr., LLC*, the trial court's fee award of $48,989.62 was upheld even though damages were only $6,800. 354 P.3d 1172, 1184–85 (Idaho 2015). In *H2O Envtl., Inc.*, the trial court was reversed where it unjustifiably reduced the attorneys' fees awarded to $7,354.64 so as to approximate the judgment awarded even though the prevailing plaintiff had sought $53,403.50 in fees. 429 P.3d at 188.

Based on the Court's own knowledge and experience, it is an unfortunate reality of litigation that validly incurred attorney's fees can often far outstrip the amounts awarded to prevailing litigants in civil cases. *See, e.g.*, *City of Meridian v. Petra, Inc.*, 299 P.3d 232 (Idaho 2013) (wherein the parties each incurred over $1,000,000 in attorney's fees in

MEMORANDUM OF DECISION − 26

a dispute over $300,000 to $400,000).  However, Idaho R. Civ. P. 54(e)(3) notably does

not impose any requirement of proportionality between judgment and attorney fee

amounts.

The Court finds that the attorneys' fees requested in this case are even more

disproportionate than the cases discussed above.  This supports Defendant's counsel's

conclusory contention that he is unaware of cases in which such a large request for fees

has been approved in relation to a relatively small monetary judgment.  While

proportionality is not required in this context, it is still a relevant consideration in

comparing awards in similar cases under Idaho R. Civ. P. 54(e)(3).  The Court finds that

Plaintiff's attorney's fees in this case are unreasonably high in comparison with awards in

similar cases.  Again, this factor overlaps and is related to other Idaho R. Civ. P. 54(e)(3)

factors discussed elsewhere in this opinion.  The Court's remedy for the

unreasonableness based on this factor has been incorporated into its decision to reduce

Plaintiff's requested fees as discussed in other sections of this opinion.

k. Cost of Automated Legal Research

Neither party argues that this factor is relevant to this case.  The Court finds no

evidence in the record that suggests the cost of automated legal research should affect the

reasonableness of the fees requested in this case.

//

//

//

MEMORANDUM OF DECISION – 27

l. Other Factors

1. Defendant's Arguments

The Court may also consider "any other factor which the court deems appropriate in the particular case." Idaho R. Civ. P. 54(e)(3)(L). Defendant asserts that Plaintiff's attorneys' fees are unreasonable because Plaintiff was not concerned with legal costs because he was exclusively focused on getting "justice." Dkt. No. 191 at 10. Defendant also claims Plaintiff's failure to provide an amount of damages sought made it difficult to settle the case, resulting in unnecessary legal costs because the case proceeded to trial. *Id.*

Addressing each of Defendant's arguments in turn, first, it was appropriate for Plaintiff to seek justice in a validly brought action in federal court. This is a common goal in litigation and has no bearing on the reasonableness of the fees in this case. Second, no party is obligated to settle its case. It is often difficult to prove damages in fraud cases, as was the case here. Moreover, as Plaintiff suggested in its pleadings, had Defendant wanted to cut off liability for attorneys' fees, it could have offered judgment under Rule 7068 at any time prior to May 1, 2019, two weeks before trial began.[13] The

---

[13] Rule 7068 incorporates Civil Rule 68 and provides that:

> [A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. . . . If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

MEMORANDUM OF DECISION – 28

Court does not find that the difficulty of settlement in this case affects the reasonableness of the attorneys' fees sought by Plaintiff.

2. The ACPO's Motions to Quash and Amend

Even though no party explicitly raised the issue in briefing, the Court finds that the ACPO's motions to quash and amend resulted in $24,703 in Plaintiff's attorneys' fees. Plaintiff sought to depose Morgan. The ACPO, apparently out of an excess of caution with respect to preserving the sanctity of its prosecutorial discretion, vigorously opposed Morgan's deposition every step of the way because of her employment with ACPO. It would be inequitable to require Defendant to pay for the costs of the arguments about if, when, and how Morgan's deposition should proceed. The Court finds that Defendant does not have to pay the $24,703 in Plaintiff's attorneys' fees related to the ACPO's motions to quash and amend.

*D. Award of Costs: Local Bankruptcy Rule 7054.1 and 28 U.S.C. § 1927*

While the award of attorney's fees in this case is controlled by Idaho state law and Idaho R. Civ. P. 54(e)(3), the award of costs is governed by Local Bankruptcy Rule 7054.1. Under this Local Rule:

> [T]he prevailing party may serve and file a cost bill in the form prescribed by the court, requesting an itemized taxation of costs. The cost bill must itemize the costs claimed and be supported by a certificate of counsel that the costs are correctly stated, were necessarily incurred and are allowed by law. The Court will enforce the provisions of 28 U.S.C. § 1927 in the event an attorney or other person admitted to practice in this court causes an unreasonable increase in costs. Not less than twenty-one (21) days after receipt of a party's cost bill, the clerk, after consideration of any objections, will tax costs and serve copies of the cost bill upon all parties of record. The cost bill should reflect the clerk's actions to each item contained

MEMORANDUM OF DECISION – 29

therein.  Within fourteen (14) days after service by any party of its cost bill, any party may file and serve specific objections to any items setting forth the grounds for the objection.

For these purposes, "the prevailing party is the one who successfully prosecutes the action or successfully defends against it, prevails on the merits of the main issue, and the one in whose favor the decision or verdict is rendered and judgment entered."  Local Rule 7054.1(b).  Also relevant here is 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Prior to the Clerk of the District Court of Idaho taking any action with respect to the costs requested in this case, Defendant timely objected to the costs, citing Civil Rule 54(d)(1) as the basis for its objection.  Dkt. No. 191 at 2.  However, Civil Rule 54(d)(1) is not incorporated into bankruptcy proceedings by the bankruptcy rules, and the appropriate standard is that found in Local Rule 7054.1, as described above.  Even so, the Court will address Defendant's argument that "the costs of litigation could have been decreased substantially if Plaintiff would have disclosed the amount of damages it sought."  *Id.*  Without more, this conclusory allegation is not sufficient to persuade the Court that Plaintiff "unreasonably and vexatiously" increased the costs in this case. Defendant did not describe with any specificity which costs in this case were excessive or unreasonable and why they should be disallowed under the appropriate legal standard.

MEMORANDUM OF DECISION – 30

The Court incorporates its previous prevailing party analysis by reference and finds that Plaintiff prevailed in this case. Plaintiff is awarded the full amount of its $7,981.31 in costs it requested.

### *Conclusion*

Plaintiff requested $233,076.50[14] in attorneys' fees and $7,981.31 in costs as the prevailing party in this case. First, the Court finds that $74,799.50 of the requested attorneys' fees related to discovery are unreasonable, and Plaintiff must bear its own discovery attorneys' fees. Second, an additional $8,421.00 of Plaintiff's attorneys' fees are unreasonable because of the duplicative efforts of Plaintiff's counsel at trial. Third, the Court finds that it is unreasonable to require Defendant to pay $24,703.00 in Plaintiff's attorneys' fees related to the ACPO's motions to quash and amend. The remaining $125,153.00 in Plaintiff's attorneys' fees are hereby awarded and must be paid by Defendant because Plaintiff prevailed in this action and is entitled to its fees and costs under Idaho law, specifically Idaho Code § 12-120. Plaintiff's costs of $7,981.31 are awarded in full under Local Rule 7054.1. A separate order will be entered.

DATED:  September 20, 2019



_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[14] As indicated above, Plaintiff itemized $233,076.50 in attorneys' fees but agreed its request could be reduced to $175,000.

MEMORANDUM OF DECISION − 31